J-S76037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES JEFFERSON RHODES | |
| Appellant | No. 2336 EDA 2015 |

Appeal from the Judgment of Sentence July 16, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005006-2014

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 28, 2016**

James Jefferson Rhodes ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County after the court, sitting as finder of fact in Appellant's non-jury trial, found him guilty of Person Not to Possess a Firearm, Firearms Not to be Carried Without a License,[1] Possession of a Small Amount of Marijuana, Possession of a Controlled Substance, and Possession of Drug Paraphernalia.[2] Sentenced to an aggregate term of 60 to 120 months' incarceration, Appellant challenges the denial of his suppression motion and his judgment

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105 and 6106, respectively.

[2] 35 P.S. §§ 780-113(a)(31), (16), and (32), respectively.

of sentence on the charge of Possession of a Controlled Substance where he possessed less than 30 grams of marijuana.  We affirm.

We glean the pertinent facts from the December 5, 2014, hearing on Appellant's pre-trial motion to suppress, where Officer Patrick Flynn of the Chester Police Department testified about events surrounding his arrest of Appellant.  On May 21, 2014, at approximately 8:00 p.m., Officer Flynn and several other officers assigned to the narcotics division entered a corner bar located at 701 Lloyd Street in Chester in search of a man they believed was part of a drug deal.  N.T. 12/5/14 at 18-19.  Both the street corner and the bar itself were deemed "high-crime" areas, as Flynn indicated that many shootings and drug deals had occurred inside and outside of the bar.  N.T. at 20.  Flynn was the third or fourth officer to enter, and he, like the others, wore a shirt bearing the word "police," verbally identified himself as an officer, and displayed a badge as he entered.  N.T. at 32.  About ten to fifteen people were in the bar when the officers arrived.  N.T. at 22.

Three officers immediately went to the left and Flynn stepped to the right, when he noticed, from about 20 feet away, Appellant stand momentarily to tuck something into his waistband before returning to his barstool.  N.T. at 19-20, 29.  In Flynn's estimation, Appellant was not otherwise engaged in patently illegal activity, nor did Flynn suspect Appellant was involved in the ongoing drug-related case, but his seven years' experience and training combined with the high-crime location gave him concern that Appellant had just attempted to conceal a firearm in

reaction to police presence. N.T. at 20, 30. Appellant did not see a gun, but he testified "I suspected it was a gun by the way [Appellant] concealed it, yes." N.T. at 30.

"Scared for his safety," Flynn drew his firearm, pointed it at Appellant, and ordered him to show his hands, which Appellant did. N.T. at 20-21. Officer Flynn approached, intending to pat down Appellant for weapons, and asked Appellant to stand up with his arms remaining above his head. Appellant, however, refused to comply. N.T. at 21. Flynn repeated the command, but Appellant again refused. *Id*. When Flynn reached Appellant and grabbed the back of his shirt in an effort to stand him up, a loaded handgun fell out of Appellant's waistband and onto the floor. N.T. at 21-22. Seeing the handgun, Flynn dispensed with the weapons pat-down and immediately placed Appellant under arrest. N.T. at 31, 35. A search incident to Appellant's arrest disclosed a small amount of marijuana on his person.

On December 9, 2014, the court denied Appellant's motion to suppress evidence, and Appellant proceeded to a January 13, 2015, non-jury trial based on a stipulated record consisting of, *inter alia*, notes of testimony from the suppression hearing and laboratory results of the marijuana. On February 12, 2015, the court found Appellant guilty on all charges and imposed sentence, as indicated *supra*, on June 8, 2015. This timely appeal followed.

Appellant presents two questions for our consideration:

1. WHETHER THE COURT ERRED IN DENYING THE [APPELLANT'S] MOTION TO SUPPRESS THE STOP AND SEARCH AND SUBSEQUENT DISCOVERY OF A HANDGUN AND DRUG SEIZED FROM MR. RHODES WHILE LEGALLY AT A RESTAURANT BAR AND WITHOUT A SEARCH WARRANT, WHEREIN THERE WAS NO [SIC] THE REQUISITE PROBABLE CAUSE, REASONABLE SUSPICION THAT A CRIMINAL ACTIVITY WAS AFOOT OR VALID CONSENT TO DO SO?

2. DID THE TRIAL COURT ERR IN FINDING THE [APPELLANT] GUILTY OF BOTH 35 Pa.C.S.A. § 780-113(A)(31), SMALL AMOUNT OF MARIJUANA, AND 35 Pa.C.S.A. § 780-113(A)(16) POSSESSION OF CONTROLLED SUBSTANCE, WHEREIN THE TOTAL WEIGHT OF THE MARIJUANA SEIZED FELL WITHIN THE SPECIFIC LANGUAGE OF THE DEFINITION OF UNLAWFUL POSSESSION OF SMALL AMOUNT OF MARIJUANA AND NOT FOR THE MORE SERIOUS OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE?

Appellant's brief at 4.

When evaluating a suppression order, we must determine whether the factual findings of the suppression court are supported by the record. **Commonwealth v. Hernandez**, 935 A.2d 1275, 1280 (Pa. 2007). Where the record supports the factual findings of the suppression court, an appellate court may reverse only when the suppression court's legal conclusions are in error. **Id.** "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." **Commonwealth v. Stilo**, 138 A.3d 33, 35–36 (Pa. Super. 2016).

Here, Appellant maintains that police lacked reasonable suspicion to order him to raise his hands and stand up from his bar stool in preparation for a weapons pat-down as they searched for an unrelated, suspected drug

dealer within the bar. Where Officer Flynn admitted he did not observe Appellant doing anything illegal when he ordered him to stand, Appellant argues, it was incumbent upon the suppression court to conclude that he was merely present in a high crime location and, therefore, wrongfully subjected to a weapons pat-down. We disagree, as the evidence established that Appellant's specific hand movements in reaction to police entry into the bar created a particularized suspicion that he was concealing a handgun in a setting notorious for illegal gun possession and use.

We set forth our standard of review:

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences and legal conclusions drawn by the suppression court from those findings are appropriate. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980). Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003). However, where the appeal of the determination of the suppression court turns on allegations of legal error, "the suppression court's conclusions of law are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 881 (1998).

*Commonwealth v. Kemp*, 961 A.2d 1247, 1252–1253 (Pa.Super. 2008) (*en banc*) (quoting *Commonwealth v. Mistler*, 912 A.2d 1265, 1269–70 (Pa. 2006)).

Furthermore, it is settled that:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. **Commonwealth v. Cook**, 558 Pa. 50, 735 A.2d 673, 676 (1999). "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." **Id**. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. **In re D.M.**, 566 Pa. 445, 781 A.2d 1161, 1163 (2001). In making this determination, we must give "due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." **Cook**, 735 A.2d at 676 (quoting **Terry v. Ohio**, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "even a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Cook**, 735 A.2d at 676.

**Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa.Super. 2009) (*en banc*)

(quoting **Kemp**, **supra** at 1255).

In **Commonwealth v. Simmons**, 17 A.3d 399 (Pa.Super. 2011), this

Court articulated the contours of a constitutional pat-down under the United

States Supreme Court's seminal decision in **Terry**:

> Specifically, "[i]t is hornbook law that the [F]ourth [A]mendment to the United States Constitution as well as Article I, § 8 of the Pennsylvania Constitution protect citizens from 'unreasonable searches and seizures.'" **Commonwealth v. Baer**, 439 Pa.Super. 437, 654 A.2d 1058, 1059 (1994). Warrantless searches and seizures (such as occurred in this case) are unreasonable *per se,* unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. **Katz v. United States**, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One such exception, the **Terry** "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." **Commonwealth v. Fitzpatrick**, 446 Pa.Super. 87, 666 A.2d 323, 325 (1995); **Terry**, [392 U.S. at 30, 88 S.Ct. 1868].

*Terry* further held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others" the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." *Terry*, 392 U.S. at 24, 88 S.Ct. 1868. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 30, 88 S.Ct. 1868. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id*. at 417–418, 101 S.Ct. 690. To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. *Commonwealth v. Arch*, 439 Pa.Super. 606, 654 A.2d 1141, 1144 (1995). If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. *Commonwealth v. Gibson*, 536 Pa. 123, 638 A.2d 203, 206–207 (1994).

*Simmons*, 17 A.3d at 402–03.

In *Simmons*, police conducted a traffic stop of a vehicle in a high crime area because its brake lights were inoperable. From a vantage point behind the subject vehicle, one of the officers observed the passenger, defendant, make a movement towards the floor, return to an upright position, and then reach across his chest. The officer relied on his twelve years' experience to conclude that the defendant's actions were consistent

- 7 -

with concealing a weapon.  Based on that concern for their safety, the officers frisked the defendant and recovered narcotics.

The defendant in **Simmons** filed a motion to suppress in which he asserted officers lacked reasonable suspicion to conduct a weapons pat-down.  The suppression court agreed, and granted his motion to suppress. We reversed, however, concluding that a protective search was warranted where the passenger/defendant's particular furtive movements in a high-crime area provided reasonable suspicion to believe he was armed and dangerous.  **Id**. at 403-405.[3]

Our Pennsylvania Supreme Court has recognized, as well, that a person unconnected with the target of a criminal investigation may nevertheless behave in such a manner as to warrant a protective search pursuant to **Terry**.  In **Commonwealth v. Grahame**, 7 A.3d 810 (Pa.

---

[3]  In **Foglia**, this Court sitting *en banc* held that an officer's observation of furtive hand movements at the waistband supplied a particularized basis for approaching and conducting a protective search for weapons on a citizen standing on a high-crime street and matching an anonymous tipster's description of a person carrying a gun.  Specifically, we noted:

> whether the defendant was located in a high crime area similarly supports the existence of reasonable suspicion.  [I]f a suspect engages in hand movements that police know, based on their experience, are associated with the secreting of a weapon, those movements will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred.

**Id.** at 361.

2010), the Pennsylvania Supreme Court rejected a "guns follow drugs" rationale offered to justify the weapons search of a woman merely present in a home where police surveillance implicated another person in selling illicit drugs. Adhering, instead, to **Terry** principles requiring the existence of reasonable suspicion that a person is armed and dangerous before conducting a weapons search, the Court first noted there was no indication that the appellant had a criminal record or was connected in any way with the drug dealer in question.

Important for our present purposes, the Court also considered whether appellant's conduct justified a protective search, but it discerned no evidence that the appellant conveyed a threat of danger to the officer:

> Furthermore, upon entering the house, Officer Russell did not detect any unusual behavior or furtive movements on Appellant's part nor did she observe a suspicious bulge in Appellant's purse. Since the Commonwealth failed to elicit any facts that supported an objectively reasonable belief that Appellant was armed and dangerous, the Superior Court's decision [affirming conviction] cannot be sustained.

**Id.** at 817.[4] Although the facts in **Grahame** did not support a protective search, implicit in the Court's rationale is that one who is proximate to an

_____

[4] For the proposition that those in proximity of an investigation into the criminal activity of another may, under certain circumstances, create a particularized basis for a protective search, **see also Ybarra v. Illinois**, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (striking down statute automatically authorizing police search of anyone present during execution of a search warrant; weapons search of customer Ybarra during execution of warrant on subject tavern deemed unlawful where facts did not support reasonable belief that he was armed and presently dangerous).

ongoing investigation with which he otherwise has no connection may, nevertheless, act in such a way as to create a particularized, objective basis for conducting a protective search of his person.

Here, Officer Flynn encountered Appellant during an investigation of a suspected drug dealer who, officers believed, had entered the corner bar Appellant was patronizing. The officers announced their presence as they entered the bar and sought to maintain a status *quo* while they conducted their search of the premises. Immediately, however, Officer Flynn observed Appellant stand from his bar stool, tuck something under his waistband, and return to his seated position. A seven-year veteran of the police force, Officer Flynn recognized Appellant's motion as one peculiar to an attempt to conceal a handgun.

Officer Flynn made this observation not from a distance while on routine patrol, but, instead, during a search conducted within the close confines of a bar notorious for firearms violations and shootings. In a setting where the potential for a volatile reaction to this police presence was real, Appellant's furtive hand movements consistent with handling a gun gave Officer Flynn reason to believe Appellant may have been concealing a weapon that threatened the safety of the officers and others.

In such moments, we "must be guided by common sense concerns that give preference to the safety of the police officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for, a weapon." *Commonwealth v. Parker*, 957 A.2d

- 10 -

311, 316 (Pa.Super. 2008) (holding suspicious gestures of driver reaching down and dipping shoulders right and left during traffic stop caused officer to reasonably suspect driver might be concealing a weapon).  For the foregoing reasons, we find that Officer Flynn had reasonable suspicion to search Appellant for a weapon, as Appellant's conduct in reaction to a police presence conveyed a threat of danger.  Accordingly, we uphold the court's order denying Appellant's motion to suppress.

In his remaining issue, Appellant contends that it was improper to find him guilty of both the greater offense of possession of a controlled substance[5] and the lesser offense of small amount of marijuana,[6] as this Court previously held in **Commonwealth v. Gordon**, 897 A.2d 504

---

[5] Section 780-113(16) prohibits
> [k]nowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act."

35 P.S. § 780-113(16)

[6] Section 780-113(31) prohibits,
> [n]otwithstanding other subsections of this section, (i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale.
>
> For purposes of this subsection, thirty (30) grams of marihuana or eight (8) grams of hashish shall be considered a small amount of marihuana.

35 P.S. § 780-113(31).

(Pa.Super. 2006) that judgment of sentence on the greater offense is improper where the defendant possessed a lesser offense amount of marijuana. The Commonwealth replies that *Gordon* does not apply to the present matter because Appellant received no sentence on the greater possession of controlled substance charge. Only on the lesser small amount of marijuana charge did the court ultimately impose a sentence.

In *Gordon*, this Court recognized the legislative intent behind including subsection (31) in Section 780-113 was to prevent imposition of a more serious sentence where the defendant is found guilty of possessing an amount of marijuana less than the benchmark limit demarcating the lesser offense of a small amount of marijuana from the greater offense of possession of a controlled substance (marijuana). In such a case, judgment of sentence should be entered on only the less serious offense with the correspondingly lesser sanctions. While Appellant indeed possessed an amount of marijuana less than the 30 gram benchmark set forth in the lesser offense, it is also true that judgment of sentence was entered only on this lesser offense.

In *Commonwealth v. Kriegler*, 127 A.3d 840 (Pa.Super. 2015), we explained our decision in *Gordon* as follows:

> In *Gordon,* the defendant was found to be in possession of 8.75 grams of marijuana. Out of this one incident, he was charged with: (1) violation of 35 P.S. § 780–113(31), proscribing the possession of a small amount of marijuana, and (2) violation of the general proscription against possession of a controlled substance as defined in 35 P.S. § 780–113(16). The trial court

found him guilty of the more serious of these charged offenses which carried with it a harsher penalty. This court held that the legislature, by including Subsection (31) in Section 780–113 of the proscribed conduct section of the Drug Act, clearly separated out the specific crime of possession of a small amount of marijuana, and created a "graduated system of penalties" that imposes far heavier punishment for traffickers and lesser sanctions for casual users of marijuana:

> In our view, the General Assembly, by including subsection (31) in section 780–113 of the proscribed conduct of the Act, set out the specific crime of possession of a small amount of marijuana and created a graduated system of penalties that imposes far heavier punishment for traffickers and lesser sanctions for casual users of marijuana.

*Gordon*, 897 A.2d at 509.

We remanded the matter for the trial court to sentence the defendant under the lesser amount statute, as the legislature clearly intended that a small amount of marijuana be separately and less severely punishable than possession of a controlled substance.

*Kriegler*, 127 A.3d at 844–45.

Unlike in *Gordon*, where the court imposed judgment of sentence only on the greater amount offense carrying a harsher penalty, the case *sub judice* involves a judgment of sentence entered only on the lesser amount offense of a small amount of marijuana—precisely as mandated by *Gordon*. That is, the record establishes that the court imposed no further penalty on the greater amount offense of possession of a controlled substance. As such, we find *Gordon* and the rationale underpinning the decision satisfied by the proceedings below, and we, accordingly, reject Appellant's appeal asking us to overturn his judgment of sentence on such basis.

Judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/28/2016</u>